IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Carolyn Green and Callrina Reid, | Civil Action No. 0:17-cv-01449-CMC |
| Plaintiffs, vs. | **OPINION AND ORDER** |
| Momentum Motor Group, LLC, United Auto Credit Corporation, and Damon Young, an individual, | **(Summary Judgment on Default Damages as to Defendant Momentum Motor Group, LLC)** |
| Defendants. | |

This matter is before the court on Plaintiffs' motion for summary judgment on default damages ("Motion"). ECF No. 40 (filed October 27, 2017). The Motion seeks a determination of damages against Defendant Momentum Motor Group, LLC ("Momentum"). *Id.* Momentum is in default and is the sole Defendant remaining in the action. ECF Nos. 19, 20.[1]

The Motion is supported by factual allegations in the Amended Complaint (ECF No. 6), admitted as a consequence of Momentum's default, affidavits of both Plaintiffs (ECF Nos. 40-1, 40-2), legal argument included in the Motion (ECF No. 40), and a supplemental memorandum addressing the availability of damages for emotional distress injuries (ECF No. 44). Each of these documents was served on Momentum, which has not filed any response despite passage of the time to do so. ECF Nos. 43, 44 at 8.

---

[1] Claims against Defendant United Auto Credit Corporation ("United") were resolved by settlement. *See* ECF No. 27, 28, 30. Claims against Defendant Damon Young ("Young") were voluntarily dismissed without prejudice. ECF Nos. 33, 34.

For reasons set forth below, the court grants Plaintiffs' Motion in part, awarding some but not all of the damages requested under the first through third causes of action.[2] The court defers entry of judgment to allow an election of remedies between the second and third causes of action.[3]

## STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

---

[2] The court finds emotional distress damages are not available under the second and third causes of action and, consequently, declines to award such damages. It also declines to award any damages for lost wages as no claim for such damages is made in the Amended Complaint.

[3] The first cause of action seeks relief for a different wrong and different injuries than are addressed in the second and third causes of action. For this reason, it is not necessary to elect remedies as between the first and other causes of action. *See infra* Discussion § 4.

2

     (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## AMENDED COMPLAINT

**Admitted Factual Allegations.** By virtue of its default, Momentum has admitted the factual allegations of the Amended Complaint. Allegations relevant to the causes of action for which Plaintiffs seek an award of damages are summarized below.

On or about February 27, 2017, Plaintiffs Callrina Reid ("Reid") and Carolyn Green ("Green"), went to Momentum's place of business with the intent of purchasing a car for Reid's use. ECF No. 6 ¶ 12.[4] Reid selected a 2007 Honda Civic ("the car"). ECF No. 6 ¶¶ 12, 13. After checking Reid's credit, Momentum advised Reid it could not sell her the car on credit. *Id.* ¶ 13. Reid was not provided written notice of the denial of credit. *Id.*

Momentum then checked Green's credit and advised Green it could sell her the car on credit. *Id.* Momentum required Green to complete a Retail Installment Contract and Security Agreement ("RIC") to obtain financing. *Id.* The amount to be financed was $5,606.65 at 24.99% interest, resulting in a total finance charge of $1,779.74, and total payments of $7,386.39. *Id.* ¶ 14. The charges included a "closing fee" of $250, included in the amount financed. *Id.* The RIC did not state any of these amounts were estimates. *Id.* In addition to the amount financed by Green, Reid made a $2,500 down payment. *Id.*

Once the RIC was completed, "Plaintiffs were assured by Defendant Momentum that the vehicle had been financed." *Id.* ¶ 16 (alleging they were told United would be the lienholder).

---

[4] Green is Reid's mother. *See* Green affid. ¶ 2 (ECF No. 40-2).

Plaintiffs took the car from the lot after receiving assurances financing was approved and any preconditions were satisfied (most critically, a requirement Momentum be able to assign its contract to a third party). *Id.* ¶¶ 16, 17. [5]

Plaintiffs allege Momentum was the original creditor and sought to profit by "shopping [the loan] to a variety of finance companies." *Id.* ¶ 18. They further allege United "purported to pay Momentum the highest profit" for the loan, but Momentum did not agree to the offered amount, leading to a later conspiracy between United and Momentum to attempt to force Plaintiffs to refinance on less favorable terms. *Id.* ¶¶ 18, 21.

Reid experienced problems with the car immediately after taking it home. *Id.* ¶ 19. She took it back to Momentum twice, leaving it for repairs for a total of four weeks during which time she was without use of the car. *Id.* ¶¶ 19, 20. The problems were not resolved despite these efforts. *Id.*

Plaintiffs attempted to make their first payment to United but were told the loan had been "sent back" to Momentum. *Id.* ¶ 21. Plaintiffs contacted Momentum and were told the credit application had been "turned down due to the car being driven by Plaintiff Reid." *Id.* Neither Plaintiff was provided written notice of this credit denial. Momentum stated Plaintiffs would need to return the car to refinance it. *Id.* At some point during this period, the car was repossessed by

---

[5] Plaintiffs also allege they purchased a service contract for $99.00, to be provided by ProGuard Warranty of the Carolinas ("ProGuard"). *Id.* ¶ 15. Plaintiffs allege Momentum and Young, who was chief executive officer of both Momentum and ProGuard, took the payment but never submitted the service contract to ProGuard. *Id.* ¶¶ 7, 38.

United and Plaintiffs were given written notice of the repossession. *Id.* ¶ 25.[6] Plaintiffs requested but were denied return of the $2,500 down payment. *Id.* ¶ 21.

**Causes of Action.** Plaintiffs assert seven causes of action against Momentum. Their Motion seeks an award of damages only as to the first three causes of action, which are discussed, in order, below.[7] ECF No. 40-1.

**Equal Credit Opportunity Act.** Plaintiffs' first cause of action alleges Momentum is a creditor under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), and violated the ECOA by failing to provide required notices of credit denials. *Id.* ¶¶ 28, 29. Plaintiffs allege (1) "Momentum was required to send Plaintiff Green an adverse action letter, or other written notice, when it denied Plaintiff Green credit and sought to restructure the contract"; and (2) "Momentum was required to provide [Plaintiff] Reid with an adverse action or other written, notice after initially denying her credit as opposed to making a blanket and unsubstantiated statement that Plaintiff Reid had simply been 'denied.'" *Id.* ¶¶ 29, 31.

Plaintiffs' damages demand under this cause of action reads as follows:

> Plaintiffs seek actual damages for physical sickness and mental suffering, including, but not limited to, worry, aggravation, stress, humiliation, anxiety, anger, fear, frustration, inconvenience, mental suffering, loss of sleep and embarrassment. Plaintiffs also seek the required punitive damages not to exceed $10,000 as set forth in the ECOA and attorneys' fees for Defendants' violations of the ECOA.

*Id.* ¶ 32.

---

[6] Plaintiffs allege they received notice from United of the repossession on or about April 25, 2017. *Id.* ¶ 25. They do not provide specifics as to when they attempted to make the first payment or when or how the car was repossessed. Those details are not necessary for this order.

[7] Each of the first three causes of action is also asserted against other Defendants. Because all other Defendants have been dismissed from the action, the court addresses these causes of action here only as they relate to Momentum.

**South Carolina Unfair Trade Practices Act.** Plaintiffs' second cause of action alleges willful violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.* ("SCUTPA"). It alleges Momentum (acting in concert with United) fabricated a reason to deny Green's loan and engaged in a scheme to "create a never-ending source of income, either by way of illegally taking down payments on vehicles which Defendants know they will be repossessing or by using the payment of a down payment to leverage individuals into refinancing vehicles at unfavorable terms after the original financing 'falls through.'" *Id.* ¶ 35. Plaintiffs allege a statement in the RIC that interest began to accrue when the contract was signed was false because other language stated the RIC did not become effective until it was assigned to a third-party finance company. *Id.* ¶ 36. They allege Momentum engaged in an unfair or deceptive practice in refusing to return Reid's $2,500 down payment and did so for the purpose of coercing Plaintiffs to enter a new contract more advantageous to Momentum. *Id.* ¶ 37. Plaintiffs also allege Momentum took the $99 payment for the service contract but never submitted the application to ProGuard. *Id.* ¶ 38.

Plaintiffs allege they "have suffered an ascertainable loss due to" these actions and seek actual damages, treble damages, attorneys' fees and costs. *Id.* ¶ 40. They identify the following injuries in addition to the loss of the down payment and payment for a service contract they did not receive:

> Plaintiffs [suffered] worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish. Additionally, Plaintiffs suffered out of pocket losses, including but not limited to the cost of finding replacement transportation, charges associated with the inspection of the vehicle, and attorneys' fees and costs.

*Id.* ¶ 41 (alleging the challenged actions were willful and, therefore, support treble damages).[8]

**South Carolina Dealer's Act.** Through their third cause of action, Plaintiffs seek recovery from Momentum under the South Carolina Dealer's Act, S.C. Code Ann. § 56-15-10 ("Dealer's Act"). Under this cause of action, Plaintiffs allege Momentum is a "dealer" subject to the Dealer's Act and violated the Dealer's Act by engaging in unfair and deceptive acts. *Id.* ¶ 43. Plaintiffs identify three actions as supporting this claim: (1) refusal to return Plaintiffs' down payment; (2) refusal to honor the financing contract with Green; and (3) charging Green interest before the contract became effective. *Id.* ¶ 45.

Plaintiffs assert the wrongful acts entitle them to double their actual damages as well as attorneys' fees and costs. They allege their "actual damages include but are not limited to, the amount of the total cost to secure replacement transportation, physical sickness, loss of sleep, worry, aggravation, stress, humiliation, anxiety, anger, fear, frustration, inconvenience and mental suffering." *Id.* ¶ 47; *see also id.* ¶ 43 (referring to lost down payment within this cause of action). They also seek treble their actual damages due to the "willful and malicious nature of Defendant Momentum's actions[.]" *Id.* ¶ 48.

**Summary Judgment Motion and Supporting Affidavits**

Through their Motion, Plaintiffs seek the following damages:

1. For violation of the ECOA, Plaintiffs seek actual damages of $1,000 and punitive damages of $10,000 (both per Plaintiff), as well as attorneys' fees and costs (ECF No. 40 at 7);

2. For violation of SCUTPA, Plaintiffs seek actual damages only on behalf of Reid and in the amount of $15,697 for out-of-pocket losses as well as $15,000 for additional injuries

---

[8] Plaintiffs do not mention the down payment and service contract losses in the paragraph claiming damages, but do mention both within this cause of action.

7

for a total of $30,687[,]" to be trebled for a total award of $92,091, as well as attorneys' fees and costs (*id.* at 9, 10);

3. For violation of the Dealer's Act, Plaintiffs seek actual damages of $15,000 on behalf of Reid and $10,000 on behalf of Green, to be doubled as mandated by the Dealer's Act, as well as attorneys' fees and costs (*id.* at 12).[9]

**Reid's Affidavit.** In her attached affidavit, Reid avers she made a $2,500 down payment that was not refunded, lost her job because she was unable to get to work without the car, and has been unable to obtain a replacement vehicle, further impairing her ability to find employment. Reid Affid. ¶¶ 2-4. Reid calculates her lost income as $12,987 (based on unemployment for 27 weeks) and claims $2,710 in other out-of-pocket expenses for a total $15,697 in out-of-pocket damages. *Id.* ¶¶ 5-7.[10] She seeks $15,000 for emotional distress with physical manifestations. *Id.* ¶ 8 (referring to "physical sickness, stomach pain, headaches, loss of sleep, worry, aggravation, stress, humiliation, anxiety, anger, fear, frustration, inconvenience, and mental suffering" resulting from Momentum's actions and her related unemployment). Reid asks the court to award her $30,697 in actual damages under each of her causes of action. *Id.* ¶ 9. She asks the court to treble

---

[9] The Motion does not specify the nature of the injuries for which recovery is sought under the ECOA claim. ECF No. 40 at 5-7. It specifies the following injuries as the source of the damages sought under the SCUTPA claim: Reid's lost $2,500 down payment, the cost of finding replacement transportation, lost job and related wage loss, and "physical sickness, loss of sleep, worry, aggravation, stress, humiliation, anxiety, anger, fear, frustration, inconvenience, mental suffering," ECF No. 40 at 9. The injuries specified under the Dealer's Act claim are similar but not identical and seek recovery on behalf of both Plaintiffs. ECF No. 40 at 11, 12 (seeking recovery for the lost down payment, cost of finding replacement transportation, [and Plaintiffs'] "physical sickness, loss of sleep, worry, aggravation, stress, humiliation, anxiety, anger, fear, frustration, inconvenience, mental suffering").

[10] While not entirely clear, the $2,710 appears to be comprised of the lost down payment ($2,500), $150 for towing the car back to Momentum for service on two occasions, and $60 for three trips related to obtaining service.

the actual damages under her SCUTPA claim for a total award of $92,091, plus attorneys' fees. *Id.* ¶ 10. She also asks for an award of "up to $10,000 and attorneys' fees" for Momentum's ECOA violation and for attorneys' fees under the Dealer's Act. *Id.* ¶¶ 11, 12.

**Green's Affidavit.** In her affidavit, Green asserts that her credit has been damaged as a result of an inquiry that appeared on her credit report for a period of time but has since been removed. She asserts the inquiry "lowered [her] credit score to 525." Green Affidavit ¶ 4 (ECF No. 40-2).[11] Green avers she suffered "damage to [her] credit score, physical sickness, loss of sleep, worry, aggravation, stress, upset stomach, headaches, humiliation, anxiety, anger, fear, frustration, inconvenience, and mental suffering" as a result of Momentum's wrongful actions. Based on these injuries she seeks "actual damages in the amount of $10,000" under the Dealer's Act, which she asks the court to double in addition to awarding attorneys' fees and costs. *Id.* ¶ 7. Green asks for "an award of up to $10,000, as well as attorneys' fees" under her ECOA claim. *Id.* ¶ 8.[12] Green does not address damages under the SCUTPA claim.[13]

## DISCUSSION

**1.**  **Equal Credit Opportunity Act Claim**

The following provisions of the ECOA govern damage awards:

---

[11] Green does not provide further detail as to how her score has been damaged. For example, she does not indicate state what her score was before the notation appeared. Neither does she suggest she was denied credit or suffered any other adverse credit-related events during the period the notation appeared (either as a result of the notation or otherwise). The Amended Complaint does not, moreover, suggest any Defendant acted improperly or without her permission in making the credit inquiry (as opposed to in denying credit without providing the required notice).

[12] The amount sought corresponds with the punitive damage demand under this claim. Green's affidavit does not refer to actual damages under this claim.

[13] This is consistent with Plaintiffs' apparent pursuit of damages only on behalf of Reid under this claim.

9

> **(a) Individual or class action for actual damages**
>
> Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for *any actual damages sustained b*y such applicant acting either in an individual capacity or as a member of a class.
>
> **(b) Recovery of punitive damages in individual and class action for actual damages; . . .**
>
> Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for *punitive damages in an amount not greater than $10,000*, in addition to any actual damages provided in subsection (a), . . . . In determining the amount of such damages in any action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

16 U.S.C. § 1691e (emphasis added).

Emotional distress damages are available under the ECOA. *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). "However, the court will not presume any injury. The actual damage must be specifically proven." *Id.* at 1277-78; *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, C.A. No. DKC 10-3517, 2012 WL 3985285 at ** 6, 7 (D. Md. Sep. 7, 2012) (citing *Anderson* for availability of out-of-pocket and emotional distress damages, but granting summary judgment to defendant where plaintiff failed to demonstrate a causative link between the the statutory violation and claimed damages).

Actual damages are not a prerequisite to an award of punitive damages. *Anderson*, 666 F.2d at 1278. In deciding whether to award punitive damages and the amount of any award, the court should consider all the circumstances, most critically those specified in Section 1691e(b). *Id.*

**Actual Damages.** The Amended Complaint discloses only emotional distress injuries and related physical manifestations as the basis for any actual damage award under the ECOA. ECF No. 6 ¶ 32. No specific actual damage demand is made.

Plaintiffs' Motion seeks an award of actual damages in the amount of $1000 per Plaintiff, but does not tie the damage demand to any specific injury. ECF No. 40 at 7. Plaintiffs' affidavits include allegations both suffered emotional distress injuries as a result of Momentum's actions (presumably including but certainly not limited to its failure to provide written notice of credit denials). *See* ECF No. 40-1 ¶ 8; ECF No. 40-2 ¶ 6. Plaintiffs place a $15,000 value on Reid's emotional distress injuries and $10,000 on Green's emotional distress injuries. *Id.* They do not purport to allocate the claimed injuries or values between Momentum's different wrongful actions.

Although the Amended Complaint does not allege a credit injury under this cause of action, Green also avers some injury to her credit. She does not, however, link the claimed injury to the failure of written notice. She, instead, avers the injury resulted from the appearance of a credit inquiry on her credit report and later removal of the inquiry, creating the impression she was denied credit. ECF No. 40-2 ¶ 4.

The only specific reference to the ECOA in either Plaintiff's affidavit is a general demand, by both, for an award of "up to $10,000" on this claim. ECF No. 40-1 ¶ 11; ECF No. 40-2 ¶ 8. This language suggests only a request for punitive rather than actual damages given Plaintiffs' request for punitive damages of "up to $10,000."

Reid has presented only minimal support for any claim she suffered actual injury as a result of Momentum's failure to provide written notice of denial of credit. The Amended Complaint indicates she was orally informed a loan could not be made in her name, apparently immediately after Momentum performed a credit check of some form. There is no allegation she completed an

11

application or that any credit inquiry or denial appeared on her credit report. Whether or not Momentum should have provided a written denial, these circumstances do not, alone, support a finding Reid suffered more than nominal harm as a result of Momentum's denial of her informal request for credit. Nonetheless, in light of Momentum's failure to respond to the motion and the violation (admitted by virtue of Momentum's default), the court finds the record sufficient to support an actual damage award of $100 to Reid for this failure.[14]

In contrast, the circumstances surrounding Green's credit application and denial support an inference she suffered emotional distress at least partially if not primarily due to the failure of written notice. Most critically, Green alleges she understood the loan was approved until she attempted to make payment and was never provided written notice of the denial. Under these circumstances, the actual damage amount requested in the Motion ($1,000) combined with Green's affidavit support an actual damage award of $1000 for Momentum's failure to provide Green written notice of denial of her loan application.

**Punitive Damages.** As noted above, the relevant factors in deciding an award of punitive damages for an ECOA violation include (1) the amount of any actual damages awarded, (2) the frequency and persistence of failures of compliance by the creditor, (3) the resources of the creditor, (4) the number of persons adversely affected, and (5) the extent to which the creditor's failure of compliance was intentional. The amount of actual damages awarded are $100 to Reid for failure to provide written notice as to her credit request and $1,000 to Green for failure to

---

[14] Reid's claimed emotional distress appears to arise predominantly from the denial of credit to Green, related repossession of the car, difficulties with the car while in Reid's possession, and Momentum's refusal to return the down payment rather than Momentum's failure to provide Reid written notice of the denial of her credit request. Thus, while Reid may have suffered emotional distress for these reasons, she may not recover damages for that distress under her ECOA claim.

provide written notice of denial of her credit application (RIC). Plaintiffs each suffered only a single failure of notice. They have, however, alleged and Momentum has not denied that its actions, including the failure of notice, were part of a larger scheme to derive profit at the expense of credit applicants. This suggests both repetition of the failure of notice and a broader impact. Plaintiffs have not offered evidence on the other factors. Considering the above factors, the court finds a punitive damage award equal to three times each Plaintiff's actual damages is appropriate.

**Conclusion as to ECOA Damages.** For the reasons set out above, the court awards Reid actual damages of $100 and punitive damages of $300 on the ECOA claim. The court awards Green actual damages of $1,000 and punitive damages of $3,000 on the ECOA claim. Plaintiffs are also entitled to an award of attorneys' fees and costs as to this claim.

**2.    South Carolina Unfair Trade Practices Act**

SCUTPA provides "[a]ny person who suffers a*ny ascertainable loss of money or property, real or personal*, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages." S.C. Code Ann. § 39-5-140 (emphasis added). "Recoverable Damages include *compensation for all injury to plaintiff's property or business* which is the natural and probable consequence of defendant's wrongs" and "include special or consequential damages that are a natural and proximate result of deceptive conduct." *Collins Holding Corp. v. Defibaugh*, 646 S.E.2d 147, 149 (S.C. Ct. App. 207 (internal quotation marks omitted, emphasis added). For damages to be recoverable, there must be a causative link between the deceptive or unfair act and the injury, not simply between the defendant's broader actions and the injury. *Id.* at 150 (reversing damages awarded in bench trial for lack of proof injuries were caused by the deceptive act as opposed to defendant's other competitive actions).

13

Damages may not be awarded based on speculative proof. *Woodson v. DLI Prop., LLC*, 753 S.E.2d 428 (S.C. 2014) (affirming summary judgment for defendant based, in part, on speculative nature of damages where plaintiff estimated a loss of $3,000 for his time and gas but admitted he had "no clue" of his actual time and expense).

**Damages Sought.** The Amended Complaint seeks recovery under the SCUTPA claim for emotional distress damages and out-of-pocket costs including but not limited to costs for replacement transportation and charges associated with inspection of the vehicle. Although not included in the paragraph addressing damages, other allegations under this claim refer to a $99 fee paid for a service contract and the lost $2,500 down payment. Plaintiffs ask that the actual damages be trebled due to the willful nature of the actions and also seek attorneys' fees and costs.

Plaintiffs' Motion seeks damages only on behalf of Reid under this cause of action. The Motion seeks $15,697 in out-of-pocket expenses, including the lost $2,500 down payment, unspecified costs of obtaining replacement transportation, and lost wages based on an assertion Reid lost her job due to lack of transportation. The Motion seeks $15,000 additional actual damages, presumably for emotional distress and related physical manifestations. Plaintiffs ask the actual damage award be trebled due to Momentum's willfulness.

In her attached affidavit, Reid asserts her actual damages include $12,897 in lost wages due to loss of the vehicle and inability to obtain a replacement (in part because of loss of down payment), $2,710 in other out-of-pocket costs (presumably consisting of the $2,500 lost down payment, plus $150 towing and $60 in trip expenses), and $15,000 for emotional distress injuries.

**Lost Wages.** The Amended Complaint does not allege Reid lost her job due to a lack of transportation. Neither does it suggest any other basis for a lost wage claim or expressly seek such

14

damages. Under these circumstances, the court finds the Amended Complaint fails to provide fair notice of any claim for lost wages and consequently, declines to award such damages.

**Out-of-Pocket Costs.** The other out-of-pocket costs sought *through the Motion* include the lost $2,500 down payment and costs of obtaining replacement transportation. Reid's supporting affidavit does not mention costs for obtaining replacement transportation but does identify two somewhat similar costs: $150 for towing and $60 for related trips. Given the Amended Complaint's express reference to the $2,500 down payment and the similarity of the expenses sought for towing and trips to those expressly alleged, the court finds these expenses totaling $2,710 are fairly predicted by the Amended Complaint and adequately supported by Reid's affidavit. The court, therefore, awards actual damages in this amount.

**Emotional Distress Damages.** Emotional distress damages are expressly sought under the SCUTPA cause of action, though no specific amount is referenced in the Amended Complaint. Such damages are also sought through the Motion, and are supported, at least through general averments, in Reid's affidavit. The court, nonetheless, declines to award emotional distress damages because it concludes they are not available under SCUTPA.

SCUTPA provides a remedy where a plaintiff has suffered an "ascertainable loss of money or property." This language suggests compensable damages are similarly limited, which would appear to exclude emotional distress damages.

Unable to locate any South Carolina decision allowing emotional distress damages for a SCUTPA violation or expressly addressing the availability of such damages, the court invited Plaintiffs to brief the issue. In their response, Plaintiffs argue actual damages necessarily include emotional distress damages. ECF No. 44 at 3 (citing a personal injury case). While they concede

an absence of on-point authority, Plaintiffs suggest allowance of such damages under the ECOA supports allowing them under SCUTPA. *Id.* at 4.

Plaintiffs' argument is not persuasive as it ignores the absence of any limitation in the ECOA similar to SCUTPA's threshold requirement for an "ascertainable loss of money or property." In light of this statutory language and the absence of any South Carolina decision holding emotional distress damages available under SCUTPA, the court finds such damages are not recoverable.

**Conclusion as to SCUTPA Damages.** For the reasons set forth above, the court finds Green has either abandoned or failed to establish entitlement to damages under the SCUTPA claim. Reid has established actual damages in the amount of $2,710. In light of Momentum's admissions by virtue of its default, Reid is entitled to trebling of those damages for a total actual damage award of $8,130, as well as an award of attorneys' fees and costs.

**3.  Dealer's Act**

The allegations supporting the Dealer's Act claim are similar but not identical to those supporting the SCUTPA claim. Both Plaintiffs seek recovery for emotional distress with physical manifestations and other damages including but not limited to the cost to secure replacement transportation. ECF No. 6 ¶ 47. No other damages are specifically mentioned in the Amended Complaint.

In their Motion, Plaintiffs identify their emotional distress injuries, the cost of obtaining replacement transportation, and the lost down payment ($2,500) as damages recoverable under this claim. ECF No. 40 at 11. They ask the court to award Reid $15,000 and Green $10,000 actual damages, to be doubled under the statute.

**Emotional Distress Damages.** The damages sought appear to arise primarily if not solely from alleged emotional distress injuries. This inference is supported by the values Green and Reid place on their emotional distress injuries through their affidavits, which correspond precisely with the damages sought under this cause of action.

Like SCUTPA, the Dealer's Act provides a private cause of action to "any person who shall be *injured in his business or property*." S.C. Code Ann. § 56-15-110. The court has not located and Plaintiffs have not directed the court to any decision directly addressing whether damages for emotional distress are available under the Dealer's Act. Given the statutory language (which makes no reference to personal injuries) and for essentially the same reasons addressed above as to SCUTPA, the court finds emotional distress damages are not available for violation of the Dealer's Act. Thus, to the extent Plaintiffs' damage demands are based on emotional distress injuries, they cannot recover under this claim.

**Other Damages.** The only other damages suggested as to this cause of action are the costs to obtain replacement transportation (mentioned in both Amended Complaint and Motion) and the lost down payment (mentioned in the Motion and Reid's affidavit). Both are damages that would be recoverable only by Reid. While Reid's affidavit supports that she paid and was not refunded the down payment, she does not identify any costs incurred to obtain replacement transportation. Thus, giving Reid the benefit of the doubt that a claim for return of the down payment is fairly predicted by this cause of action, the only recoverable damages would be for the $2,500 down payment.

**Double Damages.** Plaintiffs seek to double the amount of actual damages pursuant to Section 56-15-110, which provides claimants "shall recover double the actual damages . . . sustained" as a result of a violation of the Dealer's Act. ECF No. 44 at 3 n.3 (quoting statute).

The court finds Reid is entitled to an award of double the $2,500 in actual damages pursuant to the mandatory language of the statute. The court does not address trebling as it is not sought in the Motion.[15]

**Conclusion as to Dealer's Act Damages.** For the reasons set forth above, the court finds Green has failed to establish entitlement to damages under the Dealer's Act. Reid has established actual damages in the amount of $2,500, and is entitled to an award of double actual damages for a total actual damage award of $5,000. Reid is also entitled to an award of attorneys' fees and costs.

**4.     Election of Remedies**

The wrongs addressed in and damages awarded under the ECOA claim are distinct from those addressed in and awarded under the SCUTPA and Dealer's Act claims. The wrongs addressed in and damages awarded under the SCUTPA and Dealer's Act claims are, however, duplicative. As Plaintiff Green is entitled to recovery only under the ECOA claim, she need not make an election of remedies. In contrast, Plaintiff Reid may recover under the ECOA and only one but not both of the remaining claims. Because it provides the greater recovery, the court will presume Reid elects recovery under the SCUTPA claim unless she files notice of a different election on or before December 7, 2017**.** Entry of judgment will be delayed until the earlier of Reid's election of remedies or passage of this deadline without an election.

---

[15] The Amended Complaint seeks both doubling and trebling. Doubling of actual damages is mandatory under Section 56-15-110(1) for any violation of the Dealer's Act. Treble damages may also be awarded as punitive damages under Section 56-15-110(3) if the actions are found to be malicious. Plaintiffs do not refer either to punitive or treble damages for any Dealer's Act violation in their Motion or affidavits. *See* ECF No. 40 at 11, 12 (twice referring to double damages but making no reference to treble damages); Green affidavit ¶ 7 (seeking double damages under the Dealer's Act claim but not referring to trebling); Reid affidavit (making no reference to either doubling or trebling under this claim).

18

**5. Attorneys' Fees**

Plaintiffs are entitled to an award of attorneys' fees under each of their causes of action, subject to the election of remedies requirement addressed above. Determination of the amount of such award will be made upon filing of a properly supported and timely petition.

## CONCLUSION

For the reasons set forth above, the court finds (1) Green is entitled to actual damages of $1,000 and punitive damages of $3,000 and Reid is entitled to actual damages of $100 and punitive damages of $300 on the first cause of action (ECOA); (2) Green is entitled to no other recovery; and (3) Reid is entitled to actual damages of $2,710, which shall be trebled to $8,130, on the second cause of action (SCUTPA), *or* $2,500, which shall be doubled to $5,000 on the third cause of action (Dealer's Act). Absent a different election on or before December 7, 2017, Reid will be presumed to have elected to recover under the SCUTPA claim rather than the Dealer's Act claim. Plaintiffs are also entitled to an award of attorneys' fees and costs on the first cause of action. In addition, Reid is entitled to an award of attorneys' fees and costs on either the second or third cause of action (depending on her election). Plaintiffs may pursue attorneys' fees and costs through a timely petition. *See* Fed. R. Civ. P. 54(d). All other cause of action are dismissed with prejudice.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
November 21, 2017